BEVERLY GRILL, *Inc., Etc.*

*v.*

BURTON CROW, *Nonintoxicating Beer Commissioner of West Virginia.*

(No. 10180)

Submitted July 25, 1949. Decided July 28, 1949.
Opinion filed November 22, 1949.

LOVINS, JUDGE, dissenting.

*F. Duane Hill,* for petitioner.

*Ira J. Partlow,* Attorney General; *Eston B. Stephenson,* Assistant Attorney General; *Robert B. Goodwin,* for defendant.

*Joseph A. Blagg* and *John C. White,* as amicus curiae.

HAYMOND, PRESIDENT:

The relief sought by the petitioner, Beverly Grill, a corporation, in this original proceeding, is a writ of mandamus to compel the defendant, Burton Crow, Nonintoxicating Beer Commissioner of West Virginia, to issue to it a retail nonintoxicating beer license, Class A, at its place of business in Huntington for the fiscal year beginning July 1, 1949. The facts are not disputed and the legal question presented is whether an applicant for a license of the character indicated, who is a suitable person, operating in a lawful manner an establishment which is suitable in its physical features, may be refused such license because numerous citizens of the community in which the place of business of the applicant is located oppose the application.

On July 28, 1949, this Court awarded a writ of mandamus as prayed for by the petitioner. The reasons for its action in granting the writ are now set forth in this opinion.

Despite the protests of citizens of the community, the commissioner, in 1948, after being advised by the Attorney General, whose opinion he had requested, that a license might not be refused for that reason, granted the application of the petitioner and issued to it a Class A license for that year. The license granted in 1948 limited the applicant to the sale of beer in its original containers with permission that it be cooled but not consumed on the licensed premises. On June 4, 1949, the petitioner applied for a similar license with the same restriction for the fiscal year which began on July 1, 1949. Its application was in proper form and was accompanied by the requisite fee and bond.

By letter dated June 27, 1949, the defendant declined to issue the requested license. His letter of refusal, though conceding the suitability of the applicant and of the "physical aspect" of its building and equipment, contained these statements as the basis for the denial of the license by the defendant: "The location, however, in view of the

continuous stream of letters, telegrams, petitions and telephone calls from the citizens living in the community surrounding the establishment * * * protesting the issuance of said license because of its proximity to the churches and schools in the locality, becomes the pertinent question. In view of these protests, the dominant question is:—Should a license be issued for the operation of a beer outlet in a community in which a great number or majority of citizens feel the outlet is too close to its schools and churches? The answer to this question, as in every question where a school or a church is involved, rests upon the sound discretion of the commissioner and his discretion should be based upon the facts presented to him and in the light of the general attitude of the citizens of the community. We agree that we have many licensed outlets closer to schools and churches than the outlet in question. However, the citizens of those communities have not protested their operation. In the present case, although the schools and churches are approximately 200 feet from the outlet, we feel it is too close, and, therefore, decline to issue the license."

From the foregoing statements it is obvious that the defendant, in the exercise of his discretion, gave recognition to the wishes of the citizens of the community in administering the statute which legalizes the sale of nonintoxicating beer in this State instead of following its provisions.

The statute regulating the sale of nonintoxicating beer, Chapter 12, Acts of the Legislature, 1937, Regular Session, as amended by Chapter 15, Acts of the Legislature, 1945, Regular Session, provides, in Section 12, Article 16, that "A license may be issued by the commissioner to any person who submits an application therefor, accompanied by a license fee, and, where required, a bond, stating under oath" certain detailed information. It further provides, in the same section, that "The commissioner may refuse a license to any applicant under the provisions of this act if he shall be of the opinion: (a) That the applicant is not a suitable person to be licensed; or (b) That the

place to be occupied by the applicant is not a suitable place; or (c) That the license should not be issued for reason of conduct declared to be unlawful by this act."

Unlike the Pennsylvania statute which empowers the licensing authority to grant or refuse a license for a place within three hundred feet of a church or a school, the present statute does not provide that an applicant who occupies a place within a specified distance from a church or a school may, for that reason, be denied a license. Though the statute is silent on that subject, a regulation, 3 (a), promulgated by the commissioner by statutory authority, provides that a retail beer license may be refused "establishments in reasonable close proximity to churches, schools, state institutions, privately operated charitable or eleemosynary institutions."

It is clear that the applicant has fully complied with all the applicable requirements of the statute. That it has done so is conceded. The defendant also in effect admits, in the letter already quoted, that the applicant and the place are suitable and he makes no suggestion that the license should be denied because of any unlawful conduct by the applicant.

The authority of the commissioner to promulgate and enforce the regulation in a situation to which it applies and the validity of the regulation can not be questioned. It is clearly established, however, that the regulation was not the basis for the refusal of the license. In his letter of June 27, 1949, referred to earlier in this opinion, the commissioner admits that he has licensed many "outlets closer to schools and churches than the outlet in question," which he also states is "approximately 200 feet" from the church and the school in the area. These statements of the commissioner plainly show that the location of the establishment of the applicant, which in fact is 150 feet from the nearest church and, by measurement from different points, 185 feet and 208 feet from the nearest school house, and is separated from them by wide public streets, was not within the "reasonable close proximity" provi-

sion of the regulation; and that his refusal was based, not upon the statute or the regulation, but upon the sentiment of the community as evidenced by the protests of a large number of its residents. This action of the commissioner was not justified by law and can not receive judicial approval. The applicant had complied in all respects with the requirements of the statute and for that reason he was entitled to the license for which he had made proper application. The sale of beer at retail, when duly licensed, is a lawful business, made so by the statutes of this State; and the right of the applicant to a license to engage in it can not be ignored or nullified by official action based on its unpopularity in the community in which it is located. To permit such action would render possible the destruction of any or every lawful but locally unpopular business enterprise in any or every locality in the State. The denial of the license by the commissioner for the reason that to grant it, as required by a locally unpopular statute, would offend numerous people of the locality and meet with popular disapproval is not the proper exercise of discretion which the law requires but, from the standpoint of the law, is arbitrary and capricious action. Though the views and the sentiment of individual citizens or groups of citizens are always entitled to respect and serious consideration by public officials, they can not, until translated into law, influence or control the official conduct of public authorities in ignoring or disregarding the requirements of existing laws. To permit or sanction such action would lead to disrespect for law. The only remedy against the force and the effect of a valid but unpopular statute is its repeal in the manner provided by law; and every existing law, popular or even deservedly unpopular, must be observed by all persons everywhere subject to it, and every official subject to its requirements must recognize, comply with, and enforce its every provision. Any departure from this principle tends to destroy or render ineffective the fundamental and universally recognized doctrine that in this state and in this nation the government must be a government of law.

This court has held, in numerous decisions, that mandamus will not lie to control an administrative or executive officer in the performance of a discretionary act, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive or misapprehension of law upon the part of such officer. *State ex rel. Conley* v. *Pennybacker,* 131 W. Va. 442, 48 S. E. 2nd 9; *Hinkle* v. *Franklin,* 118 W. Va. 585, 191 S. E. 291; *Walden* v. *State Compensation Commissioner,* 113 W. Va. 307, 167 S. E. 743; *Reynolds* v. *State Road Commission,* 111 W. Va. 398, 162 S. E. 319; *State ex rel. Dillon* v. *Neal,* 104 W. Va. 259, 139 S. E. 757; *Ellis* v. *State Road Commission,* 100 W. Va. 531, 131 S. E. 7; *Swearingen* v. *Bond, Auditor,* 96 W. Va. 193, 122 S. E. 539, 36 A. L. R. 1500; *State ex rel. Noyes* v. *Lane,* 89 W. Va. 744, 110 S. E. 180. When, however, the act of such officer is capricious or arbitrary, the exercise of discretion may be controlled by mandamus. *State ex rel. Garbutt* v. *Charnock,* 105 W. Va. 8, 141 S. E. 403, 56 A. L. R. 1094; *State ex rel. Hoffman* v. *Town of Clendenin,* 92 W. Va. 618, 115 S. E. 583, 29 A. L. R. 37; *State ex rel. Noyes* v. *Lane,* 89 W. Va. 744, 110 S. E. 180; *Dillon* v. *Bare and Carter,* 60 W. Va. 483, 56 S. E. 390.

As the action of the defendant in refusing to grant the license applied for by the petitioner was arbitrary and capricious it is subject to control by mandamus. The petitioner, having shown its right to the relief sought in this proceeding, the writ for which it prayed was properly awarded by the order entered by this Court on July 28, 1949.

*Writ awarded.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the conclusions reached by the Court in this proceeding.

The power to regulate the sale of nonintoxicating beer is conceded in the opinion and provided for by Chapter 12, Acts of the Legislature, 1937, Regular Session, as amended by Chapter 15, Acts of the Legislature, 1945, Regular Session. Similarly, the authority for, as well as the reason-

ableness of, the commissioner's regulation 3 (a), quoted in the opinion of the Court, is conceded. It would serve no purpose further to state the reasons underlying these conclusions.

A license to sell nonintoxicating beer may be refused for three reasons: (1) The suitability of the licensee; (2) the conduct of the proposed licensee; and (3) the suitability of the place where beer is to be sold. We are only concerned in this proceeding with the suitability of the place where the relator proposes to dispense beer.

The Court's opinion is postulated upon the statement of the commissioner in a letter to the applicant to the effect that numerous persons residing at or near the place where the beer was to be sold objected to the issuance of the license. Of course, there is no legal basis for seeking or considering the approval or disapproval of persons not immediately concerned, relative to the issuance of the license to dispense nonintoxicating beer. In other words, there are no constitutional or statutory provisions for a referendum on such question, as is pointed out in the Court's opinion.

But an analysis of the reasons for the commissioner's refusal of the license to the relator shows that his real reason was the unsuitability of the place where the business was to be conducted, to-wit: the proximity of the place to a school and one or more churches.

The Court's opinion cites ample authorities for the proposition that the performance of a discretionary act by an administrative or executive officer will not be coerced by mandamus "in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive or misapprehension of law upon the part of such officer." I do not think that the facts, as disclosed by the stipulation of the parties and other parts of this record, show any act of capriciousness on the part of the commissioner. An arbitrary action is one performed according to the will or judgment of an individual. A capricious action may be defined as an uncertain or unreasonable action. Wherein

did the commissioner act without considering the law? The statute gives him the power to make regulations and to refuse a license if the business was not to be conducted at a suitable place. In what particular was the commissioner moved by caprice? It certainly is reasonable for the commissioner to refuse a license to dispense beer at a point located near a school or churches and in a residential neighborhood. Had the commissioner assigned as his only reason that the issuance of the license was objected to by numerous residents, it could well have been characterized as capricious, but, as I have endeavored to show, the real reason for the refusal of the license was the proximity of the proposed beer dispensary to churches and schools. I think the undenied physical situation entirely eliminated capricious and arbitrary conduct on the part of the commissioner and, therefore, his discretion should not have been interfered with by this Court.

It is my opinion that this Court has substituted its discretion for that of the beer commissioner, in whom the Legislature has placed discretionary power to grant or refuse licenses to dispense nonintoxicating beer.

For the foregoing reasons, I would refuse the writ of mandamus prayed for by relator.