STATE OF WEST VIRGINIA EX REL.
HARRY ELLIS, d/b/a HARRY'S USED CARS

*v*.

HUBERT A. KELLY, COMMISSIONER DEPART-
MENT OF MOTOR VEHICLES, AND PHILIP R.
SIMMS, DEPUTY COMMISSIONER DEPART-
MENT OF MOTOR VEHICLES

(No. 12008)

Submitted January 13, 1960. Decided February 16, 1960.

*Glyn Dial Ellis,* for relator.

*W. W. Barron,* Attorney General, *Clement R. Bas-
set,* Assistant Attorney General, for respondents.

GIVEN, JUDGE:

In this original proceeding in mandamus, relator, Harry Ellis, doing business as Harry's Used Cars, prays that a writ be issued requiring defendants, Hubert A. Kelly, Commissioner Department of Motor Vehicles, and Philip R. Simms, Deputy Commissioner Department of Motor Vehicles, to set aside an

order entered by the deputy commissioner, canceling dealer's license certificate No. 2662, theretofore issued to relator, and to reinstate such license, and to restore unto relator authority to use Class D Special Plates Nos. 6310 to 6315, inclusive, theretofore issued to him. The matter is heard on the petition and the exhibits filed therewith, the answer of the commissioner and deputy commissioner and exhibits filed herewith, and on oral arguments of counsel for the respective parties.

The license in question was issued to relator on June 12, 1959, for the year beginning July 1, 1959, and ending June 30, 1960, on application made pursuant to provisions of Article 7 of Chapter 17A of the 1951 Acts of the Legislature, as amended, now Chapter 17A, Article 7 of the Michie's 1955 Code of West Virginia. Pursuant to the license issued, relator operated a used car business, located in the building described in the application, situated at or near Logan. It is that business which the commissioner now contends is not being operated in accordance with the requirements of pertinent statutes.

On September 16, 1959, the commissioner, with an inspector from his office, Ralph Skeen, visited the place of business of relator and, according to their testimony before the deputy commissioner, made an exhibit with the answer of defendants, made an investigation of the operation of the business, observing facts which caused him to believe that relator was not complying with the requirements of the statutes relating to the operation of such a business. Accordingly, notice was given relator of a hearing, to be held at the office of the commissioner, for the purpose of determining whether the certificate should be canceled. The sufficiency of the first and second notices issued by the commissioner was questioned and, on October 29, 1959, a third notice was issued and served on relator requiring the hearing to be held at the offices of the commissioner, November 10, 1959. The notice recited as grounds for the cancellation of the certificate that "the Dealer Licensee had not com-

plied with the Statute in keeping and maintaining the records required by law and such records were not available at reasonable hours to inspection by the Commissioner of Motor Vehicles or his authorized representatives; had failed and neglected to forward to this Department a copy of temporary registration plates or tags and transfers of license plates, issued and made by the Dealer; and that there are no service facilities for servicing vehicles sold by the Dealer; and, is not a full time operation." An order was entered by the deputy commissioner, who heard the matter, on November 23, 1959, reciting that relator had been found guilty of each of the charges contained in the third notice, except the charge that the business of relator was not a full time operation. The findings were made by the deputy commissioner and the order was entered by him. Relator and Mrs. Harry Ellis testified at the hearing and denied the charges contained in the notice.

Subsequent to the service of the first notice, considerable correspondence was had between counsel for relator and the commissioner, and certain conversations took place between the relator and the deputy commissioner. In a letter dated October 22, 1959, addressed to the commissioner, the attorney for relator requested that "Mr. Philip R. Simms disqualify himself to sit as Judge in the hearing of our case. Further, it seems that his attitude toward both me and my client is a biased one * * *". This suggestion or motion was acted on by the commissioner advising the attorney, by letter of October 29, 1959, that "I do not feel that it would be proper for me to request the deputy commissioner to disqualify himself, under the circumstances". As before noticed, the deputy commissioner held the hearing, made the findings of fact, and entered the order canceling the certificate and the authority to use the special plates, though the commissioner personally conducted the investigation and personally testified before his deputy.

The statute, Section 2, Article 7 of Chapter 17A,

Michie's 1955 Code, provides that the Department of Motor Vehicles, after proper application and payment of fees, when satisfied that applicant is of good character, and has complied, or will comply, with applicable laws, shall issue a license certificate, "which shall entitle the licensee to carry on and conduct the business of a dealer or wrecker, as the case may be". The section further provides that "The department may refuse to issue a license or, after written notice to the licensee and a hearing, may cancel a license when satisfied that the applicant for a license or the licensee has failed to comply with the provisions of this chapter." It is significant that the statute requires that a "hearing" be afforded the licensee before the cancellation of a certificate issued to him, but no procedure governing such a hearing is provided by the statute, except that the commissioner is authorized to promulgate appropriate rules therefor. Other provisions of the Act govern as to the duties of the licensee in the keeping of records and the operation of such a business.

Numerous contentions are before us, relating to the sufficiency of the notice given on which the hearing was based, the sufficiency of the proof to sustain the findings, the power or authority of the commissioner to "cancel" the license, or because no method of appeal from the order of the commissioner was provided by the Legislature. We think, however, the important and controlling question relates to due process of law, guaranteed by provisions of the State and Federal Constitutions, Article III, Section 10, State Constitution, and Article XIV, Section 1, Federal Constitution. Article III, Section 10, reads: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." The pertinent provision of the Federal Constitution is to like effect.

The business of buying and selling used automobiles is a lawful business, and any person has a right to engage in such a business, but, being within the police

power, such a business is subject to reasonable regulations. 5A, Am. Jur., Automobile and Highway Traffic, Section 176; *Nelsen v. Tilley,* 137 Neb. 327, 289 N. W. 388, 126 A.L.R. 729. But such regulations, and the means of enforcing such regulations, must be "by methods consistent with due process", and must not be arbitrary, unreasonable or capricious. *Nebbia v. New York,* 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940; 11 Am. Jur., Constitutional Law, Section 262. Action by a state, though by an administrative officer, must accord with requirements of due process. "The government and every one of its branches, departments, agencies, and subdivisions are bound by the prohibition of the due process guaranties, which extend to legislative, judicial, administrative, or executive proceedings. The guaranties do not bind the action of individuals as such." 16A C.J.S., Constitutional Law, Section 568e; *Southern Railway Company v. Virginia,* 290 U. S. 190, 54 S. Ct. 148, 78 L. ed. 260; *Dobbins v. Los Angeles,* 195 U. S. 223, 25 S. Ct. 18, 49 L. ed. 169; *Nulter v. State Road Commission,* 119 W. Va. 312, 193 S. E. 549; 12 Am. Jur., Constitutional Law, Section 634; 4 M.J., Constitutional Law, Section 132.

Though no satisfactory comprehensive definition or description of due process of law has been formulated, and probably can not be, certain principles relating to its application have been determined by careful consideration and adjudication. Thus, it is well settled that, to deprive a person of life, liberty or property, which includes the right to engage in a lawful business, *Simpson v. Stanton,* 119 W. Va. 235, 193 S. E. 64, due process requires that a trial or hearing must be fair, unbiased and by an impartial tribunal, whether the tribunal be administrative or judicial, and that the power exercised by the tribunal must not be exercised in an arbitrary or capricious manner. "The rule of disqualification applicable to judges has been held to apply to the board sitting for the purpose of hearing a petition for revocation of a license". 53 C.J.S., Licenses, Section 44d(2).

In *Tumey v. Ohio*, 273 U. S. 510, 47 S. Ct. 437, 71 L. ed. 749, Mr. Chief Justice Taft, speaking for a unanimous Court, reversing the Supreme Court of Ohio, after fully considering the presently pertinent question, citing certain cases decided by the West Virginia Supreme Court of Appeals, stated: "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law". See *McGuire v. Blount*, 199 U. S. 142, 26 S. Ct. 1, 50 L. ed. 125; *Truax v. Corrigan*, 257 U. S. 312, 42 S. Ct. 124, 66 L. ed. 254; *Southern Railway Company v. Virginia*, 290 U. S. 190, 54 S. Ct. 148, 78 L. ed. 260; 12 Am. Jur., Constitutional Law, Section 635; 4 M.J., Constitutional Law, Section 133.

In the light of such authorities, remembering the history giving rise to the adoption of the due process provisions, and keeping in mind the freedoms assured the people thereby, we are of the view that the record discloses that relator has been denied due process of law and that, for that reason, the order should be set aside and the writ prayed for awarded. It can hardly be contended that the commissioner, in the making of the investigation and in testifying before the deputy commissioner appointed by him and responsible to him, beyond any reasonable probability, did not become biased and prejudiced in the matter being heard. It would seem to be beyond human experience and expectation for impartiality to result where the officer is the investigator, prosecutor, witness and trier of the facts. It would seem clear, in these circumstances, that the deputy commissioner could not have acted with impartiality in the consideration of relator's rights. His actions were for the commissioner, and could not be expected to be free and independent of his influence. Such procedure would most certainly "offer a possible temptation to

the average man to forget the burden of proof''. This, of course, is not to intimate that the commissioner or deputy commissioner acted with any evil intention or design. But denial of due process, within the meaning of the law, is of itself arbitrary and capricious action, though the officer or tribunal may have acted with the most worthy intentions. We have not, of course, overlooked the statutory provisions which may permit the deputy commissioner to hear and determine such matters in proper circumstances.

The action of the officer, being, within the meaning of the law, arbitrary and capricious, amounting to denial of due process, may be controlled by mandamus. *Grill, Inc. v. Crow, Nonintoxicating Beer Commissioner,* 133 W. Va. 214, 57 S. E. 2d 244. No costs are awarded to either party. Code, 53-1-8, as amended.

*Writ awarded.*