STATE OF WEST VIRGINIA *ex rel.* DAVID S. BOWEN, INDIVIDUALLY AND DOING BUSINESS AS BOWEN PHARMACY

*v.*

EDWIN F. FLOWERS, *Commissioner, Department of Welfare for the State of West Virginia*

(No. 13122)

Submitted September 29, 1971.   Decided November 9, 1971.

Dissenting Opinion November 22, 1971.

*Leo Catsonis,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *James G. Anderson, III, Phillip D. Gaujot,* Assistant Attorneys General, for respondent.

BERRY, JUDGE:

This mandamus proceeding was instituted under the original jurisdiction of this Court by the petitioner, David S. Bowen, doing business as Bowen Pharmacy in Madison, West Virginia, against Edwin S. Flowers, the Commissioner of the Department of Welfare for the State of West Virginia, to compel the respondent to hold a hearing so that the petitioner could defend himself against certain unspecified "irregularities" which resulted in the petitioner's suspension on June 28, 1971, from further participation in the medical pharmaceutical programs administered by the Department of Welfare. A rule was issued by this Court on September 13, 1971, returnable September 28, 1971, directing the respondent to show cause why the writ should not be awarded as prayed for by the petitioner. The respondent filed an answer to the petition which was demurred to by the petitioner and the case was submitted for decision on arguments and briefs of the parties.

The petitioner is a registered and licensed pharmacist who commenced business on December 1, 1969, at Bowen Pharmacy in Madison, West Virginia. Prior to the opening of his own store, the petitioner had been employed at a drug store in Madison and had dealt with the Department of Welfare in the dispensing of drugs and medications to welfare recipients under various aid programs administered by the Department of Welfare. After commencing his own business, petitioner qualified as a participating vendor-pharmacy with the Department and began furnishing medical prescription service to recipients of the various welfare programs. The petitioner received periodic payments from the Welfare Department, the amount depending on the invoices that the department received from the petitioner.

On March 26, 1971, the respondent requested the Purchasing Practice Procedures Commission to investigate Bowen Pharmacy. On June 28, 1971, the respondent suspended petitioner from participation in the programs administered by the Welfare Department because of alleged irregularities in petitioner's procedures. At the time of the suspension, Bowen alleged that the Department owed him approximately $36,000 for unpaid invoices which he had submitted. The respondent replied that the Department had invoices and checks made to petitioner, which were being held, that amounted to approximately $29,000, but denied the Department owed petitioner this amount.

On July 9, 1971, petitioner asked the respondent, in writing, for a hearing so that he could defend himself against the "charges". Petitioner states that he never received a reply to this request. The respondent claims that petitioner was told that the audit and investigation were not complete and that the matter was still under investigation.

The petitioner alleges that his reputation and business have been damaged as a result of this suspension and he asks that a writ of mandamus be awarded requiring respondent to afford him notice and hearing on the suspension or to reinstate him and pay to him the amounts due and owing him for goods and services rendered.

The petitioner claims his rights to due process have been denied as a result of the respondent's refusal to give him a hearing. The respondent replies that he is not required to give a hearing in these circumstances, as the rules and regulations do not provide for such hearing. Furthermore, the respondent contends that summary suspension is proper when an overriding public interest is involved.

There is no question that the petitioner is entitled to a hearing and be given the opportunity to defend himself under the due process clause of the federal and state constitutions. Article XIV, Section 1, Federal Constitution and Article III, Section 10, State Constitution; *Goldberg* v.

*Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Simpson* v. *Stanton,* 119 W.Va. 235, 193 S.E. 64; *In Re Downs,* 82 N.M. 319, 481 P.2d 107. The opportunity to be heard is a fundamental requirement of the due process clause. *Armstrong* v. *Manzo,* 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62. However, where there is an overriding public interest involved the hearing may be postponed for a reasonable period of time in order to allow an investigation to be conducted. *Boddie* v. *Connecticut,* 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113.

The petitioner relies on the case of *Goldberg* v. *Kelly, supra,* in which it was held that a welfare recipient was entitled to a hearing before his welfare benefits could be terminated. It should be noted, however, that the court further stated that in some instances government benefits may be administratively terminated without affording the recipient an evidentiary hearing before the suspension or termination of benefits.

The petitioner strongly relies on the case of *State ex rel. Bronaugh* v. *City of Parkersburg,* 148 W.Va. 568, 136 S.E.2d 783, and asserts that it is indistinguishable from the case at bar. In that case the petitioner's privileges as a staff member of a hospital were summarily suspended for a period of three months, at the expiration of which his application for reinstatement was denied without giving any reason or affording him a hearing, and it was held that mandamus would lie to compel the hospital to give the petitioner a hearing with respect to his application.

It has been repeatedly held that where a public interest is involved it outweighs an infringement of a private interest and a temporary suspension may be warranted for a reasonable period of time pending an investigation. *R. A. Holman & Co.* v. *Securities and Exchange Commission,* 112 U.S. App. D.C. 43, 299 F.2d 127, *Cert. denied* 370 U.S. 911, 82 S. Ct. 1257, 8 L. Ed. 2d 404; *Ewing* v. *Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S. Ct. 870, 94 L. Ed. 1088; *Gonzalez* v. *Freeman,* 118 U.S. App. D.C. 180, 334 F.2d 570. It has also been held that the Fourteenth Amendment to

the Federal Constitution does not impair the police power of the state. *City of Huntington* v. *State Water Commission*, 137 W.Va. 786, 73 S.E.2d 833.

It clearly appears from the authorities that if the respondent had reason to believe irregularities were taking place he would be justified in temporarily suspending the petitioner's participation in the medical pharmaceutical programs administered by the respondent without first affording him a hearing, because the public welfare is involved in the dispensing of drugs in this program. However, the suspension cannot be for an indefinite period of time. The investigation in such case must be promptly and properly conducted and the hearing must be held within a reasonable period of time after the suspension. *Gonzalez* v. *Freeman, supra.* The length of temporary suspension depends upon the needs and circumstances of the individual case. See *Opp Cotton Mills, Inc.* v. *Administrator*, 312 U.S. 126, 61 S. Ct. 524, 85 L. Ed. 624, and *Gonzalez* v. *Freeman, supra.*

The petitioner has no right to obtain a contract to dispense drugs for the state under the program involved. However, where this contract or privilege is granted, the state cannot act arbitrarily, either substantively or procedurally, against the person granted the contract. *Gonzalez* v. *Freeman, supra.* The investigation in the instant case apparently has been conducted for a period of about seven months and the suspension has been in effect for about four months and the matter has not been referred to law enforcement officials in connection with suspected fraudulent practices. The petitioner's place of business is located in Madison, Boone County, West Virginia, which is not a thickly populated area, and it would appear, under the circumstances of this case, that a reasonable period of time has elapsed in which to conduct a proper investigation. The petitioner has demanded a hearing and has not been granted one by the respondent, which would appear, under the facts and circumstances of this case, to be arbitrary or capricious on the part of the respondent, and in

such cases mandamus will lie to control the action of the administrative officer. *Beverly Grill, Inc.* v. *Crow,* 133 W.Va. 214, 57 S.E.2d 244. This principle is clearly stated in the syllabus of the *Beverly Grill, Inc.* v. *Crow, supra,* case, wherein it is stated: "Mandamus lies to control the action of an administrative officer in the exercise of his discretion when such action is arbitrary or capricious."

It has also been held that due process of law extends to the actions of administrative officers as well as the judicial branch of the government. This principle is stated in point 2, syllabus, of the case of *State ex rel. Ellis* v. *Kelly,* 145 W.Va. 70, 112 S.E.2d 641, as follows: "Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments."

For the reasons stated herein, the writ of mandamus prayed for will be granted directing the respondent to conduct and hold a proper hearing to determine whether or not the petitioner's privileges under the program involved should be suspended and to allow the petitioner an opportunity to be heard and present his defense. It is further directed that such hearing be conducted within a period of thirty days from the date of the decision of this Court granting the writ which period this Court has determined is a reasonable time in the case at bar in which to complete any investigation in connection with the suspension of the petitioner's privileges.

*Writ granted.*

CARRIGAN, JUDGE, dissenting:

I respectfully dissent from the majority opinion for the following reasons:

I do not believe that petitioner had any legal right to do business with the State of West Virginia, and specifically with the Department of Welfare. The department's medical service program was enacted and placed in operation

for the benefit of welfare recipients and not for the benefit of the vendors of pharmaceutical services.

As Mr. Justice Black stated in *Perkins* v. *Lukens Steel Co.,* 310 U.S. 113, 127-28 (1940):

> Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. Acting through its agents as it must of necessity, the Government may for the purpose of keeping its own house in order lay down guideposts by which its agents are to proceed in the procurement of supplies, and which create duties to the Government alone. * * * [The Public Contracts] Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants—can complain. * * * *Courts have never reviewed or supervised the administration of such an executive responsibility even where executive duties "require an interpretation of the law." Judicial restraint of those who administer the Government's purchasing would constitute a break with settled judicial practice and a departure into fields hitherto wisely and happily apportioned by the genius of our polity to the administration of another branch of Government.* (Emphasis added.)

Even in *Gonzalez* v. *Freeman,* 334 F.2d 570, 574 (D.C. Cir. 1964), the court recognized that "It is equally correct, broadly speaking, to say that no citizen has a 'right,' in the sense of a legal right, to do business with the government."

Unfortunately, in the *Gonzalez* case, the court having recognized the lack of such "legal right," then illogically

proceeded to make an exception on the basis that since the government had entered into a contract, it would result in a severe economic loss to Gonzalez not to grant the enforcement of the right, which the court had stated did not exist; and apparently further qualifying the exception's applicability on whether the economic loss would be great or small. Such reasoning is certainly not affording "equal protection" to all.

Even accepting the *Gonzalez* case as correctly stating the law, as the majority did, it is distinguishable in that in *Gonzalez* the "debarment," *i.e.,* the suspension, was made permanent without a hearing, while in the case before us petitioner was only suspended pending investigation.

Pursuant to Code, 9-4-1, as amended, respondent promulgated various rules and regulations, including regulation 520.1 dealing with "Order of Suspension" and regulation 520.2 "Causes for Suspension." It therefore appears that respondent was authorized to suspend petitioner's participation in this program pending investigation.

> The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective. *Opp Cotton Mills, Inc.* v. *Administrator,* 312 U.S. 126, 152-53 (1941).

The record shows that petitioner participated in the medical service program from December 16, 1969 to June 28, 1971, and that during this eighteen months period he sold between $100,000 and $108,000 in drugs to welfare recipients. During the period petitioner had participated in this program, he had been paid all but approximately $36,000, which he claims to be due. An investigation of these sales had been in process for about seven months, although the suspension of petitioner had only existed for four months prior to his application to this Court.

In view of the public interest involved in determining that proper drugs are dispensed and also in view of the expenditure of public funds in the amount of over $100,-000, as well as the probable difficulty in verifying petitioner's invoices, I do not feel that respondent has been afforded ample time to complete its investigation. Assuming, for this purpose, that petitioner had a right to a hearing, even under *Gonzalez* and *Opp Cotton Mills,* it would not be necessary to hold such a hearing until it was determined that petitioner would be permanently barred from participating in the program.

The West Virginia decisions cited are, in my opinion, distinguishable from the present case in that under the facts of those cases the party was deprived from earning a living by being prevented from engaging in his business or calling, or was refused a hearing before final determination. In the case before us, petitioner has only been deprived of one customer and he can still continue his business.

For these reasons, I would refuse the writ of mandamus.