697 S.E.2d 154

**STATE of West Virginia ex rel. MAPLE CREATIVE LLC, Petitioner**

**v.**

**David TINCHER, Director of Purchasing Division, Department of Administration, Respondent.**

No. 35504.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 2010.

Decided June 18, 2010.

**119**

Edward P. Tiffey, Esq., Tiffey Law Practice PLLC, Charleston, WV, for Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Benjamin F. Yancey III, Esq., Barbara H. Allen, Esq., Attorney General's Office, for Respondent.

PER CURIAM:

Petitioner Maple Creative, LLC seeks an original jurisdiction writ of mandamus directing Respondent David Tincher, Director of Purchasing Division, Department of Administration, to cancel a contract awarded to Stonewall Retail Marketing, Inc. and to award the contract to the petitioner. For the reason explained below, we deny the writ.

## I.

### FACTS

In May 2009, Respondent David Tincher, Director of Purchasing Division, Department of Administration, issued a Request for Proposal with regard to an advertising and public relations services contract with the West Virginia Division of Tourism. Petitioner Maple Creative, LLC timely submitted a bid proposal for the contract. The petitioner is a West Virginia limited liability company located in Charleston. With its bid proposal, the petitioner submitted a vendor preference certificate in which it sought, pursuant to W. Va.Code § 5A–3–37 (2006),[1] preference due to its residency status. Specifically, the petitioner sought a 2.5% resident vendor preference based on the fact that it is a corporation that is located in West Virginia, and an addi-

tional 2.5% preference based on the fact that at least 75% of the employees working on the project being bid are residents of West Virginia. The petitioner's bid contained the lowest cost proposal.

After the petitioner and the other bidders made oral presentations to the Advertising Contract RFP Review Committee (hereinafter "evaluation committee" or "committee"), the committee assigned scores to the bidders based on both strategic/creative technical criteria and the cost proposal of each bidder. The evaluation committee ultimately recommended Stonewall Retail Marketing, Inc., an Ohio company, as the successful bidder. The Division of Tourism concurred with this recommendation.

On December 21, 2009, the Senior Buyer issued a bid tabulation in which he erroneously reported that the petitioner had not requested a resident vendor preference. Also on that date, a purchase order was printed with regard to the contract at issue; it was signed by the purchasing division's authorized representative on December 23, 2009; approved as to form by the Attorney General on December 28, 2009; and certified encumbered on December 29, 2009. In this purchase order, Stonewall Retail Marketing agreed to enter into a contract with the Division of Tourism for advertising and public relation services. The purchase order indicated that the contract became effective on January 1, 2010.

On December 29, 2009, the petitioner was notified by facsimile transmission that its bid was not successful. According to the petitioner, its Vice President, James Nester, visited the respondent's office to review the bid file on January 8, 2010. In the file, Mr. Nester discovered two separate score sheets. One score sheet applied the resident vendor preference to the petitioner's cost proposal which resulted in the petitioner receiving the highest total score. The other score sheet did not apply the preference to the petitioner's cost proposal, and this resulted in Stone Retail Marketing receiving the highest total score. Mr. Nester had a conversation with

1. W. Va.Code § 5A–3–37 was amended effective March 13, 2010 to grant to nonresident small, women and minority-owned businesses the same preference made available to resident vendors. This amendment is not applicable to this case.

Ron Price, the respondent's assistant director, in which Mr. Price informed him that the resident vendor preference did not apply to the petitioner because the petitioner was already the low bidder on the cost component of the bid. Mr. Price further informed Mr. Nester that the existence of the score sheet including the resident vendor preference was "a mistake." Later that same day, Mr. Price called the petitioner to reiterate that the resident vendor preference did not apply. When the petitioner indicated that it would protest the bid award to Stonewall Retail Marketing, Mr. Price replied that the respondent "will look at it and if we are wrong, we will reverse it, if we are right, it will stay the way it is." That same day, the petitioner delivered a letter to the respondent notifying the respondent of its intent to protest the award. This letter stated in its entirety as follows: "Please accept this letter as notice of our firm's intent to contest the recent purchase order award related to RFQ Number TOR3676."

On January 19, 2010, the petitioner filed its protest with the respondent in which the petitioner alleged five grounds of error in the awarding of the contract. The next day, the respondent denied the protest on the basis that the petitioner's January 8, 2010, notice of intent was untimely as it had not been filed within five working days of the date on which the subject contract was awarded, certified, encumbered, and mailed. The respondent also indicated that the petitioner's January 8, 2010, notice of intent to protest was insufficient to constitute a protest because it lacked the specificity required by law. Finally, the respondent denied the protest on the additional ground that the actual January 19, 2010, protest was untimely.

Thereafter, the petitioner presented its petition to this Court praying for a writ of mandamus to be directed against the respondent. This Court issued a rule directing the respondent to show cause, if any he could, why a writ of mandamus should not be awarded against him as prayed for by the petitioner. Argument was conducted before the Court on May 4, 2010.

## II.

## STANDARD OF REVIEW

This Court has indicated that the purpose of mandamus is to enforce "an established right" and a "corresponding imperative duty created or imposed by law." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 398, 540 S.E.2d 917, 922 (1999) (citation omitted). "Mandamus [also] lies to control the action of an administrative officer in the exercise of his discretion when such action is arbitrary or capricious." *State ex rel. Affiliated Const. v. Vieweg*, 205 W.Va. 687, 693, 520 S.E.2d 854, 860 (1999) (quoting Syllabus, *Beverly Grill, Inc. v. Crow*, 133 W.Va. 214, 57 S.E.2d 244 (1949)) (additional citations omitted). Finally, in determining the appropriateness of mandamus in a given case, this Court adheres to the following oft-repeated axiom:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

## III.

## DISCUSSION

In its petition for a writ of mandamus, the petitioner raises several arguments in support of its claim that it should have been awarded the contract by the respondent. However, we find it unnecessary to discuss these arguments because we agree with the respondent that the petitioner's protest of the contract award was untimely. As a result of this untimeliness, the petitioner is unable to show that it has a clear right to the relief sought or that the respondent has a legal duty to do the thing which the petitioner seeks to compel.

This case is governed by legislative rule 148 C.S.R. which became effective on July 1, 2009. The purpose of the rule is to serve as "an explanation and clarification of

operative procedures for the purchase of commodities, services or printing by the Purchasing Division of the Department of Administration." 148 C.S.R. § 1–1.1. Specifically, 148 C.S.R. § 1–8.1.1 provides, in pertinent part,

> Protest of a purchase order or contract awards must be submitted no later than five (5) working days after the award. The vendor is responsible for knowing the bid opening and award dates. Protests received after these dates may be rejected at the option of the Director.

With regard to the effect of legislative rules, this Court has held that "[a] regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va.Code*, 29A–1–2(d) [1982], and such a legislative rule has the force and effect of law." Syllabus Point 5, *Smith v. West Virginia Human Rights Com'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004).

Upon application of 148 C.S.R. § 1–8.1.1 to the facts of this case, this Court concludes that the petitioner failed to protest the award of the contract to Stonewall Retail Marketing within five working days of the award of the contract. The contract was awarded on December 29, 2010, which is the date the contract was certified encumbered by the respondent. Therefore, the latest date on which a protest could be timely filed was January 7, 2010, five working days after the award.[2] However, the petitioner did not file its protest until January 19, 2010, eleven working days after the contract was awarded.

Although the petitioner filed a notice of intent to protest on January 8, 2010, this notice did not constitute a proper protest. According to 148 C.S.R. § 1–8.1.2,

> All protests shall be submitted in writing to the Purchasing Division and contain the following information:
>
> 8.1.2a. the name and address of the protestor;
>
> 8.1.2.b. the requisition, purchase order or contract numbers;

8.1.2.c. a statement of the grounds of protest;

8.1.2.d. supporting documentation, if necessary; and

8.1.2.e. the resolution or relief sought.

8.1.2f. Failure to submit this information shall be grounds for rejection of the protest by the Director.

The petitioner's January 8, 2010, letter did not include the grounds of protest, any supporting documentation, or the resolution or relief sought. Because the petitioner did not file a protest of the award of the contract to Stonewall Retail Marketing until eleven days after the award of the contract, this Court finds that the award was untimely under 148 C.S.R. § 1–8.1.1.

In its brief to this Court, the petitioner presents several reasons for the untimely filing of its petition, none of which this Court finds valid. First, the petitioner notes that the contract was awarded on December 29, 2010, during a week in which the petitioner's employees were all out of the office for the holidays. This Court finds, however, that there is no provision in our law that tolls the period for filing a protest if the award of the contract occurs during the week between Christmas Day and New Year's Day. Also, upon becoming aware of the facsimile transmission once the petitioner's employees returned to the office on Monday, January 4, 2010, the petitioner still had four days in which to timely file a protest but failed to do so.

Second, the petitioner complains that while the respondent transmitted the facsimile to the petitioner on December 29, 2009, informing the petitioner that its bid was unsuccessful, the respondent failed to follow up with a letter sent by first class mail. This excuse also is unavailing. The respondent had no duty to mail a letter of notification to the petitioner. Rather, 148 C.S.R. § 1–8.1.1 clearly indicates that "[t]he vendor is responsible for knowing the bid opening and award dates."

---

**2.** The contract was awarded on Tuesday, December 29, 2009. Five working days after this date were (1) Wednesday, December 30, 2009; (2) Monday, January 4, 2010; (3) Tuesday, January 5, 2010; (4) Wednesday, January 6, 2010; and (5) Thursday, January 7, 2010.

Third, the petitioner opines that the contract awarded to Stonewall Retail Marketing has an effective date of January 1, 2010, which was a State holiday. Therefore, the first effective business date under the contract was January 4, 2010. This fact, however, is not helpful to the petitioner. The applicable rule provides that a protest must be submitted no later than five working days after the *award*, which was December 29, 2009, not the effective date of the contract. Moreover, even if the date on which the five-day time period began to run was January 4, 2010, the petitioner failed to file its protest within five days of that date.

Next, the petitioner asserts without explanation that it learned that Stonewall Retail Marketing was selected as the prevailing bidder on January 7, 2010. However, the time period for filing a protest begins to run when the contract is awarded, not when the protesting bidder learns the contract is awarded. Further, 148 C.S.R. § 1–8.1.1 charges the vendor with knowing the bid award date. Therefore, we find no merit to this argument.

Finally, the petitioner avers that the respondent should be equitably estopped from denying the petitioner's protest as untimely based on the respondent's Assistant Director's statement, made on January 8, 2010, that the respondent "will look at [the contract award] and if we are wrong, we will reverse it, if we are right, it will stay the way it is." We reject this argument also. The facts indicate that the petitioner's protest was filed more than five days after the Assistant Director's comment.

For the reasons set forth above, we conclude that the petitioner's protest of the award of the contract at issue was untimely in that it was filed later than five working days after the award. Because of the untimeliness of the protest, the respondent had the option, pursuant to 148 C.S.R. § 1–8.1.1, to reject the protest. As a result, the petitioner does not have a clear legal right to the relief which it sought, and the respondent does not have a legal duty to do the thing which the petitioner seeks to compel.

As noted above, mandamus also lies to control the action of an administrative officer in the exercise of his discretion when such action is arbitrary or capricious. However, the petitioner has failed to show that the respondent's decision to reject the petitioner's protest as untimely was arbitrary or capricious where the protest was filed eleven days after the contract was awarded and six days after the time period for the filing of the protest expired.[3]

## III.

### CONCLUSION

For the foregoing reasons, the rule to show cause heretofore granted is discharged and the writ of mandamus prayed for by the petitioner is denied.

Writ denied.

Justice McHUGH disqualified. Judge FOX sitting by temporary assignment.

Justice WORKMAN and Justice KETCHUM dissent and reserve the right to file dissenting opinions.

KETCHUM, J., dissenting:

Maple Creative submitted a proper bid proposal for the advertising and public relations services contract at issue in this case. This proposal included a resident Vendor Preference Certificate. It is clear that under our law, the Legislature intended to require the State to give *preference* to companies residing in West Virginia and who employ West Virginians. This is a legitimate goal for the use of our tax dollars—to spend them in our state and benefit our citizens and economy.

In the case before us, the State conducted a dual analysis, one with and one without the resident vendor preference. In the spreadsheet giving Maple Creative the appropriate resident vendor preference, Maple Creative received the highest score. In the spreadsheet not giving Maple Creative the resident vendor preference, an out-of-state vendor re-

---

**3.** The majority of this Court believes that even if the petitioner's protest below was timely, the petitioner has failed to show a clear legal right to the relief sought and a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel.

ceived the highest score. As the majority noted, the State used the spreadsheet that did not give Maple Creative the resident vendor preference and, by such, awarded the contract to the out-of-state vendor. This makes little sense to me and I believe that it clearly defeated the legislature's intent that businesses residing in our state—businesses that pay taxes in our state, grow our economy and provide good decent jobs for our citizens—be given preference over out-of-state companies that do little to benefit our tax revenue or grow our state's economy.

The resident preference issue aside, I also dissent because I believe that the State abused its discretion when finding that Maple Creative's protest was untimely. As the majority opinion notes, the State is permitted to use discretion in allowing a late protest. 148 C.S.R. 1–8.1.1. ( ... "Protests received after these dates may be rejected at the option of the Director."). In the present case, we are not confronted with a flagrant delay in filing a protest—a few days at most. Moreover, it was the Respondent's Assistant Director that led Maple Creative to believe that the contract award was going to be reviewed based upon Maple Creative's oral protest after seeing the bid file. The Assistant Director informed Maple Creative that the State "will look at it and if we are wrong, we will reverse it, if we are right, it will stay the way it is."

It was abundantly clear to the State, before the protest period expired, that Maple Creative was protesting the State's having failed to give it a resident vendor preference. The respondent's Assistant Director—an employee of the State—created confusion in the steps Maple Creative needed to take to preserve its right of protest when it told Maple Creative, in response to Maple Creative's oral protest, that "we will look at it and if we are wrong, we will reverse it...." Under these circumstance, Maple Creative was not flagrant in the delay of filing its protest. Conversely, the State's failure to use sound discretion and allow Maple Creative's protest—under these facts—was a flagrant abuse of discretion.

I believe that my prior decisions have made clear that I am not prone to fanciful interpretations of our statutes and rules and my dissent today does not indicate a departure from that judicial philosophy. Instead, it is very clear to me that the legislature intended to give West Virginians a preference in awarding public service contracts involving the expenditure of our tax dollars. It is equally clear that the legislature intended to—and did—give the State the discretion to accept protests to bid awards that may not have been timely filed. In the present case, the State failed to give Maple Creative a resident preference and compounded that error when it then abused its discretion by rejecting Maple Creative's protest as being untimely made.

For these reasons, I would grant the Writ of Mandamus and remand this matter with directions that Maple Creative's protest be considered on the merits.

WORKMAN, J., dissenting:

Maple Creative, Inc., a West Virginia business, submitted a bid to the Respondent, David Tincher, Director of the Purchasing Division, Department of Administration ("the Director"), to contract with the West Virginia Division of Tourism for public relations and advertising services. Despite well-established West Virginia law providing a preference to West Virginia businesses in such contract bids, the Director refused to apply the preference to Maple Creative. Instead, the Director awarded the contract to an out-of-state company, Stonewall Retail Marketing. The Director then refused to consider Maple Creative's protest despite the fact that the Assistant Director of the Purchasing Division ("Assistant Director"), had informed Maple Creative that the Purchasing Division would review the award. Left with no other recourse, Maple Creative filed a petition for a writ of mandamus.

Unfortunately, the majority does not evaluate the Director's substantive decision to not apply the resident vendor preference to Maple Creative's bid and, thus, fails to address the most significant legal issue in the case. Instead, ignoring the clear tenor and intent of the "Jobs for West Virginians Act of 2009," West Virginia Code § 5A–3–37 ("the Act"), the statute creating a preference for

West Virginia businesses, the majority holds that, because Maple Creative filed its protest several days late, it forfeited its opportunity to contest the Director's application of the Act.

Unfortunately for Maple Creative and the other businesses bidding on the tourism contract, the Director announced the decision to award the contract to Stonewall Retail Marketing on December 29, 2009, during the week between the Christmas and New Years holidays. Maple Creative, however, did not learn of the contract award until the next week, on January 7, 2010. The following day, January 8, 2010, Maple Creative promptly notified the Director that it intended to file a protest.

Under the legislative rule explaining and clarifying the operative procedures for the Purchasing Division, Maple Creative had five business days to file a protest of the contract award. *See* 148 CSR § 1–8.1. Importantly, although January 8, 2010, was technically one day after the close of the deadline for filing a protest, the Assistant Director informed Maple Creative on that day that the Division "will look at it and if we are wrong, we will reverse it, if we are right, it will stay the way it is." The Assistant Director was well within his authority to make such a promise because the legislative rule clearly permits the Director to consider protests which are filed after the five day time period. *See* 148 CSR § 1–8.1.1 ("Protests received after these dates *may* be rejected at the option of the Director."). Thus, by informing Maple Creative on January 8, 2010, that the Purchasing Division would review the award, the Assistant Director, in effect, agreed to accept Maple Creative's late-filed protest.

As expected, Maple Creative submitted its formal protest several days later, on January 19, 2010. Despite the Assistant Director's promise, however, the Director rejected Maple Creative's protest without reviewing the matter or issuing a written opinion as required under 148 CSR § 8.2.1. Maple Creative, therefore, has received no substantive review of its protest and the Director has not issued a written opinion explaining its decision to deny Maple Creative the resident vendor preference.

Because of the Assistant Director's January 8, 2010 promise, under the doctrine of equitable estoppel, the Director should have reviewed Maple Creative's protest. Alternatively, the Director should have exercised the discretion afforded him by 148 CSR § 8.1.1 to consider Maple Creative's protest, given the circumstances under which it was filed. In either case, such review would have resulted in a written opinion either explaining the Director's decision to deny Maple Creative the resident vendor preference or applying that preference and awarding the contract to Maple Creative.

Importantly, review of Maple Creative's protest would have focused all parties on the substantive issue of whether, as a West Virginia business, Maple Creative was entitled to receive a vendor preference. Instead, the Director elevated a mere procedural issue above this substantive question. To do so under these facts, where Maple Creative had a reasonable basis for filing its protest several days after the five-day time frame, and where the Associate Director promised to review the matter anyway, was an abuse of discretion.

Moreover, pursuant to the plain language of the Act, Maple Creative was entitled to the maximum resident vendor preference on the cost portion of its bid. Maple Creative undisputedly fits the definition of a "resident vendor," *see* 110 CSR § 12C–2.14, and has the requisite number of employees who are West Virginia residents, *see id.* § 12C–4.2, to qualify for the maximum five percent vendor preference. *See id.* § 12C–4.5. The Act applies the preference to resident vendors, or those with the requisite number of West Virginia employees, if "the vendor's bid does not exceed the lowest qualified bid from a nonresident vendor by more than two and one-half percent of the latter bid...." W. Va.Code § 5A–3–37(a)(1) & (2). Because Maple Creative's bid was the lowest, it necessarily did "not exceed the lowest qualified bid from a nonresident vendor" by any amount and, thus, Maple Creative was entitled to the resident vendor preference pursuant to the plain language of the statute.

The Director, however, contends that Maple Creative was not entitled to a preference because its bid was the lowest submitted. According to the Director, the resident vendor preference does not apply to a resident vendor's bid when that bid is already the lowest in cost. As support for this interpretation, the Director cites solely to the Act. The plain language of the Act, however, merely states that, to qualify for the preference, the resident vendor's bid cannot exceed, by more than two and one-half percent, the lowest qualified bid from a non-resident vendor. Nothing in the Act limits the application of that language when the resident vendor's bid is actually the lowest bid. Accordingly, pursuant to the plain language of the Act, Maple Creative was entitled to the resident vendor preference. *See* W. Va.Code § 5A-3-37(a).

Importantly, pursuant to the Director's own calculations as set forth in Division of Tourism Form TOR 3676, had the resident vendor preference been applied, Maple Creative's bid would have had the highest final score and, thus, Maple Creative would have been awarded the contract. The Director's decision not to apply the preference, therefore, directly resulted in the loss of a contract to a West Virginia company.

By refusing to apply the resident vendor preference to Maple Creative's bid despite the plain language of West Virginia Code § 5A-3-37, and by refusing to consider Maple Creative's protest after indicating that it would review the issue, the Director has abused his discretion and acted in a manner that is arbitrary and capricious. In so doing, the Director has ignored the Legislature's clear intent to encourage the award of State contracts to West Virginia businesses when reasonable. For these reasons, I respectfully dissent.