392 S.E.2d 701

**Vince P. SHUMATE**

v.

**WEST VIRGINIA DEPARTMENT OF MOTOR VEHICLES.**

No. 19230.

Supreme Court of Appeals of West Virginia.

April 19, 1990.

Roger W. Tompkins, Atty. Gen., Paul E. Jordan, Asst. Atty. Gen., Charleston, for West Virginia Dept. of Motor Vehicles.

John D. Wooton, Wooton, Wooton and Fragile, Beckley, for Vince P. Shumate.

McHUGH, Justice:

In this case, the West Virginia Department of Motor Vehicles appeals the final order of the Circuit Court of Raleigh County. The appellee is Vince P. Shumate. This Court has reviewed the petition for appeal, all matters of record, and briefs of the parties. We are of the opinion that the final order of the Circuit Court of Raleigh County should be reversed.

I

On March 8, 1980, the appellee was arrested for driving under the influence of alcohol, in violation of *W.Va.Code*, 17C–5–2 [1976], which was in effect at the time. That statute, in pertinent part, provided:

(a) It is unlawful and punishable as provided in subsections (c), (d) and (e) of this section for any person to drive any vehicle in this state while:

(1) He is under the influence of alcohol[.]

In addition to the *criminal* penalties provided, *W.Va.Code*, 17C–5–2 [1976] also provided the following *administrative* remedy:

(c) [I]n every case of such conviction [for driving under the influence of alcohol], such convicted person's operator's or chauffeur's license shall be revoked *for a period of six months.*

. . . .

(d) . . . [W]henever the records of the department [of motor vehicles] disclose that a conviction is the *second* such conviction of such person within a period of five years for a violation of subsection (a) or (b) of this section, his operator's or chauffeur's license shall be revoked by the commissioner [of the department of motor vehicles] *for a period of ten years*[.]

(e) . . . [W]henever the records of the department disclose that a conviction is

the *third* such or any subsequent conviction of such person *within a period of five years* for a violation of subsection (a) or (b) of this section, his operator's or chauffeur's license *shall be revoked* by the commissioner *for a period of ten years and indefinitely thereafter unless it is restored by the department* as hereinafter provided. Whenever the commissioner, after full investigation, shall find that the character of any person who was convicted of a third or subsequent offense under subsection (a) or (b) of this section and the circumstances at the time indicate that he is not likely to repeat his offense again and the public good does not require that his license be longer revoked, the commissioner may if it is deemed advisable restore such license at any time more than ten years after the date on which it was revoked.

The discretionary power herein conferred may be exercised by the commissioner and the department with respect to the restoring of licenses revoked because of convictions prior to the passage hereof.

(emphasis supplied)

On September 19, 1987, the appellee was again arrested for driving under the influence of alcohol. The applicable *criminal* statute in force at the time was again, *W. Va.Code*, 17C–5–2 [1986], which is also the current statutory enactment.[1]

Between the appellee's two arrests, specifically, in 1981, *W. Va.Code* chapter 17C, article 5A was enacted. This article, which was amended in 1986, establishes provisions whereby the commissioner of the Department of Motor Vehicles, through *administrative* proceedings, may revoke a license to operate a motor vehicle. *W. Va. Code*, 17C–5A–1 [1986].

*W.Va.Code*, 17C–5A–2(i) [1986], provides, in pertinent part:

(i) If the commissioner [of the department of motor vehicles] finds by a *preponderance of the evidence* that the person did drive a motor vehicle while under

1. For purposes of the case before us, it is not necessary to discuss the specific provisions of the current *W.Va.Code*, 17C–5–2 [1986].

the influence of alcohol, ... or did drive a motor vehicle while having an alcoholic concentration in his blood of ten hundredths of one percent or more, by weight, ... the commissioner shall revoke the person's license for a period of six months: Provided, That *if the commissioner has previously suspended or revoked the person's license* under the provisions of this section or [*W.Va.Code*, 17C–5A–1], *the period of revocation shall be ten years*[.]

(emphasis supplied)

Furthermore, subsection (j) of *W.Va. Code*, 17C–5A–2 [1986] provides, in pertinent part:

(j) For purposes of this section, where reference is made to previous suspensions or revocations under this section, the following types of criminal convictions or administrative suspensions or revocations shall also be regarded as suspensions or revocations under this section or [*W.Va.Code*, 17C–5A–1]:

. . . .

(2) Any conviction under the provisions of a *prior enactment* of [*W.Va.Code*, 17C–5–2] for conduct which occurred within a period of *five years immediately preceding* the first day of September, one thousand nine hundred eighty-one[.]

(emphasis supplied)

The appellee's first revocation, in March, 1980, although pursuant to *W.Va.Code*, 17C–5–2 [1976], occurred within five years of September 1, 1981, as specified by *W. Va.Code*, 17C–5A–2(j)(2) [1986]. The commissioner of the Department of Motor Vehicles considered the 1980 revocation, and, consequently, upon the September 19, 1987 occurrence, revoked the appellee's license for a period of ten years pursuant to *W.Va. Code*, 17C–5A–2(j)(2) [1986].

The appellee contends that this application of *W.Va.Code*, 17C–5A–2(j)(2) [1986] results in a violation of the *ex post facto* clauses of the *United States Constitution* and the *West Virginia Constitution*. The Circuit Court of Raleigh County agreed with the appellee, that *W.Va.Code*, 17C–5A–2 [1986] constitutes an *ex post facto* application of the law to the appellee, and

is therefore, unconstitutional. The circuit court concluded that the appellee's license should only be revoked for a period of six months, and not ten years, because the September 19, 1987 offense would have constituted the appellee's "first offense."

## II

Article I, section 10 of the *United States Constitution* provides: "No State shall ... pass any ... ex post facto Law[.]" Similarly, article III, section 4 of the *West Virginia Constitution* provides: "No ... ex post facto law ... shall be passed."

■ In syllabus point 1 of *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980), this Court held: "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him."

■ The question with which we must deal in this case is whether *W.Va.Code*, 17C–5A–2 [1986], as applied to the appellee, violates *ex post facto* principles of the *United States Constitution* and the *West Virginia Constitution*. For the following reasons, we hold that it does not.

The Supreme Court of Washington, in a case with facts nearly identical to those before us in this case, has held that that state's "Habitual Traffic Offenders Act" is not unconstitutionally retroactive. In *State v. Scheffel*, 82 Wash.2d 872, 514 P.2d 1052 (1973) (en banc), *appeal dismissed*, 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974), the defendants challenged the constitutionality of Washington's newly enacted "Habitual Traffic Offenders Act." That act provided for a driver's license revocation of anyone who, among other offenses, was convicted of driving under the influence of alcohol or drugs three or more times within a five-year period. *Id.* at 875, 514 P.2d at 1054. The defendants in *Scheffel* had each accrued two drunk-driving convictions prior to the enactment of the "Habitual Traffic Offenders Act." Upon the defendants' third convictions, which oc-

curred subsequent to the enactment of the "Habitual Traffic Offenders Act," the defendants' driver's licenses were revoked. In rejecting the defendants' contention that application of the "Habitual Traffic Offenders Act" was, in effect, *ex post facto*, the Washington court stated:

Each of the defendants in the instant case had accrued two convictions prior to the effective date of the act. At that time they were not classified as habitual offenders. *Upon the effective date of the act, they were on notice that if they accrued one more violation within the statutory period, they would be classified as habitual offenders.* Each accrued another violation within the act's prohibition. But for the additional violation they would not be classified as habitual offenders. *It was the final violation which brought them within the ambit of the act.*

We find no vested right which has been impaired or taken away. The act does not impose any new duty, and it does not attach any disability on either of the defendants in respect to transactions. The defendants could have avoided the impact of the act by restraining themselves from breaking the law of this state.

A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage or because it fixes the status of a person for the purposes of its operation. . . .

We also disagree with the defendants' argument that the revocation of a driver's license is a punishment. While recognizing in one context that it might be so interpreted, *it has been almost universally held that the suspension or revocation of a driver's license is not penal in nature and is not intended as punishment, but is designed solely for the protection of the public in the use of the highways.* It is also well established that a proceeding to revoke a driver's license is a civil not a criminal action.

*Id.* at 878–79, 514 P.2d at 1056–57 (emphasis supplied) (citations omitted).

We agree with the Washington court's reasoning. In this case, *W. Va. Code,* 17C–5A–2(j)(2) [1986], was enacted *prior to* the appellee's second violation in 1987. It was not enacted after the appellee's second violation. Clearly, the order in which the pertinent events in this case transpired, including the appellee's two violations and the enactment of *W. Va. Code,* 17C–5A–2(j)(2) [1986], does not give rise to a violation of *ex post facto* principles. Consequently, the appellee, at the time of the enactment of *W. Va. Code,* 17C–5A–2 [1986], was put on notice that if the appellant, the Department of Motor Vehicles, found that the appellee drove "a motor vehicle while under the influence of alcohol," then the appellee's license to operate a motor vehicle could be revoked. Furthermore, subsection (i) of *W. Va. Code,* 17C–5A–2 [1986] permits the Department of Motor Vehicles to revoke the appellee's license to operate a motor vehicle for a period of ten years because such license was previously "suspended or revoked" in 1980, pursuant to *W. Va. Code,* 17C–5–2 [1976]. Subsection (j)(2) of *W. Va. Code,* 17C–5A–2 [1986] allows for any such suspension or revocation occurring five years preceding September 1, 1981, to be considered as a previous "suspen[sion] or revo[cation]" for administrative revocation proceedings. Clearly, it was the legislature's intent to permit the commissioner of the Department of Motor Vehicles, in an administrative proceeding, to consider such previous suspensions and revocations in determining the length of a revocation.

The appellee, in support of his contention that the application of *W. Va. Code,* 17C–5A–2 [1986] is *ex post facto*, maintains that the loss of his license to operate a motor vehicle is a penalty, and, therefore, is punitive. Consequently, the appellee claims that *ex post facto* principles are violated by the enhancement of such "punishment." We do not agree. "The intent of the West Virginia traffic laws which provide that the commissioner of motor vehicles revoke the licenses of dangerous drivers is protection for the innocent public." *Stalnaker v.*

*Roberts,* 168 W.Va. 593, 599, 287 S.E.2d 166, 169 (1981). Similarly, the Supreme Court of Appeals of Virginia has held that "the revocation is not for the punishment of the offender, but is for the protection of the public in removing from the highways a dangerous driver." *Huffman v. Commonwealth,* 210 Va. 530, 532, 172 S.E.2d 788, 789 (1970). *See also Scheffel,* quoted above.

Accordingly, we hold that it is not a violation of the *ex post facto* clauses, *U.S. Const.* art. I, § 10, and *W.Va. Const.* art. III, § 4, to apply the provisions of *W.Va. Code* chapter 17C, article 5A, as amended, to persons whose license to operate a motor vehicle has previously been suspended or revoked pursuant to *W.Va. Code* chapter 17C, article 5, as amended.[2]

Even if there were merit to the appellee's contention that application of *W.Va. Code,* 17C–5A–2(j)(2) [1986] is *ex post facto,* we would be hard pressed to conclude that the *ex post facto* clauses of the *United States Constitution* and the *West Virginia Constitution* are violated.

Chapter 17C, article 5A of the *West Virginia Code* was originally enacted in 1981 to provide the appellant, the Department of Motor Vehicles, an *administrative* remedy, specifically, to revoke a person's license to operate a motor vehicle if the appellant determines that such person violated the *criminal* statutes of driving under the influence of alcohol or controlled substances, mainly, *W.Va. Code,* 17C–5–2, as amended.[3]

■ The statutory remedy with which the Department of Motor Vehicles is provided, as pointed out, is administrative, and, therefore, proceedings which take place pursuant to such statutory enactment are civil proceedings. Moreover, unlike criminal proceedings, the burden of proof in such administrative proceedings, as set forth in *W.Va. Code,* 17C–5A–2(i) is "a preponderance of the evidence[.]" We have recognized that some "courts have specifically found the *ex post facto* clause not applicable in administrative proceedings to revoke a driver's license." *Shell v. Bechtold,* 175 W.Va. 792, 797 n. 8, 338 S.E.2d 393, 397 n. 8 (1985). This principle is well established.[4] *State v. Boos,* 232 Kan. 864, 870, 659 P.2d 224, 230, *cert. denied,* 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1374 (1983); *State v. Page,* 332 So.2d 427, 429–30 (La.1976); *Honeycutt v. Scheidt,* 254 N.C. 607, 610, 119 S.E.2d 777, 780 (1961); *Everhart v. State,* 563 S.W.2d 795, 797 (Tenn.Crim.App.1978), *cert. denied,* 563 S.W.2d 795 (Tenn. Apr. 10, 1978); *Huffman v. Commonwealth,* 210 Va. 530, 532, 172 S.E.2d 788, 789 (1970); *State v. Scheffel,* 82 Wash.2d 872, 879, 514 P.2d 1052, 1057 (1973) (en banc), *appeal dismissed,* 416 U.S. 964, 94 S.Ct.1984, 40 L.Ed.2d 554 (1974).

■ Accordingly, we reiterate the principle that the *ex post facto* clauses of the *United States Constitution,* article I, section 10, and the *West Virginia Constitution,* article III, section 4, do not apply to administrative proceedings for which the purpose is to suspend or revoke a license to operate a motor vehicle.

Consistent with the foregoing, the final order of the Circuit Court of Raleigh County is reversed.

Reversed.

---

**2.** It is noteworthy that applications of similar motor vehicle provisions, such as a so-called "point system," are generally not invalid as *ex post facto* applications. Such provisions are generally valid if they afford persons due process and are not discriminatory in violation of equal protection principles. *See* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 118 (1980) (and cases cited therein); annotation, *Regulations Establishing a "Point System" as Regards Suspension or Revocation of License of Operator of Motor Vehicle,* 5 A.L.R.3d 690 (1966).

**3.** Article 5A also permits the appellant to revoke a person's license to operate a motor vehicle if the appellant determines that such person violated municipal ordinances similar to *W.Va. Code,* 17C–5A–2, as amended. *W.Va. Code,* 17C–5A–1(c) [1986].

**4.** It is fundamental that *ex post facto* principles do not apply to civil proceedings, but only criminal proceedings. *Galvan v. Press,* 347 U.S. 522, 531 n. 4, 74 S.Ct. 737, 743 n. 4, 98 L.Ed. 911, 922 n. 4 (1954); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798).