IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0484

_____

FILED
**November 12, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER, COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner

v.

TIMOTHY R. MCCABE,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
Honorable David J. Sims, Judge
Civil Action No. 18-CAP-11

REVERSED AND REMANDED

_____

Submitted:  October 28, 2020
Filed:  November 12, 2020

Patrick Morrisey, Esq.
Attorney General
Steven E. Dragisich, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

James G. Bordas, III, Esq.
Erica Cross Conti, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia
Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1.     "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."  Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2.     "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*."  Syl. Pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

3.     "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment."  Syl. Pt. 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967).

4.     "'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches.  Every reasonable

construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.' Syllabus Point 1, *State ex rel. Appalachian Power Company v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965)." Syl., *Johnson v. Bd. of Stewards of Charles Town Races*, 225 W.Va. 340, 693 S.E.2d 93 (2010).

5.      "Under Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. Pt. 1*, Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980).

6.      "The question of whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction, and requires the application of a two-level inquiry adopted by the United States Supreme Court in *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). First, courts must determine whether the legislature indicated, either expressly or impliedly, a preference for labelling the statute civil or criminal. Second, if the legislature indicates an intention to establish a civil remedy, courts must consider whether the legislature, irrespective of its intent to create a civil

remedy, provided for sanctions so punitive as to transform the civil remedy into a criminal penalty. As part of the second level of the inquiry, courts should be guided by the following factors identified by the United States Supreme Court in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644, 661 (1963): 'Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]'" Syl. Pt. 1, *State ex rel. Palumbo v. Graley's Body Shop, Inc.*, 188 W.Va. 501, 425 S.E.2d 177 (1992).

7.     "The question whether an Act is civil or punitive in nature is initially one of statutory construction. A court will reject the Legislature's manifest intent only when a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the Legislature's intention." Syl. Pt. 4, *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001).

8.     West Virginia Code § 17A-6E-4(c)(5) (2006) is a regulatory statute which does not violate the prohibition against ex post facto laws.

9.     "Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well

as to the judicial branches of the governments." Syl. Pt. 2, *State ex rel. Ellis v. Kelly*, 145 W.Va. 70, 112 S.E.2d 641 (1960).

10.    West Virginia Code § 17A-6E-4(c)(5) (2006) is rationally related to the State's legitimate interest in preventing fraudulent activity in the motor vehicle industry and is not arbitrary or discriminatory.

**HUTCHISON, Justice:**

The petitioner, Everett Frazier in his official capacity as Commissioner of the West Virginia Division of Motor Vehicles ("Commissioner" or "DMV"),[1] appeals the April 30, 2019, final order of the Circuit Court of Ohio County that ordered the DMV to grant the application for a motor vehicle salesperson license submitted by the respondent, Timothy R. McCabe. In this appeal, the Commissioner contends that the circuit court erred by finding that West Virginia Code § 17A-6E-4(c)(5) (2006),[2] which prohibits the issuance of a motor vehicle salesperson license to an applicant previously convicted of a felony involving financial matters or the motor vehicle industry, could not be applied to the

---

[1] When the events giving rise to this appeal occurred, Pat S. Reed was the Commissioner of the DMV. Upon her retirement on March 31, 2019, Adam Holley was named Acting Commissioner. While this case has been pending before this Court, Everett Frazier was named Commissioner. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the current Commissioner was automatically substituted as the named petitioner.

[2] When the respondent applied for a motor vehicle salesperson license, West Virginia Code § 17A-6E-4(c)(5) (2006) provided that the DMV shall refuse to issue a motor vehicle salesperson license if the applicant "[h]as been convicted of a felony: Provided, That upon the applicant's appeal the commissioner may grant an exemption to this restriction if the felony did not involve financial matters or the motor vehicle industry[.]" While this case was pending below, the statute was amended, and effective March 7, 2019, West Virginia Code § 17A-6E-4(c)(5) now provides for refusal of the license if the applicant "[h]as been convicted of a felony: Provided, That upon the applicant's appeal the commissioner may grant an exemption to this restriction if the felony did not involve a financial transaction involving the sale or purchase of a motor vehicle or the motor vehicle industry[.]" Our analysis in this case is based upon the 2006 version of the statute as it was in effect at the time the respondent submitted his application for a motor vehicle salesperson license.

1

respondent. Upon consideration of the parties' briefs and oral arguments, the appendix record, and pertinent authorities, we reverse the circuit court's order and remand this case for entry of an order reinstating the Commissioner's decision denying the respondent's application for a motor vehicle salesperson license.

## I. Facts and Procedural Background

On April 5, 2018, the respondent submitted an application for a motor vehicle salesperson license to the DMV after obtaining employment at Matt Jones Preowned Auto, LLC, in Wheeling, West Virginia.[3] The respondent was granted a temporary license but was subsequently informed on April 30, 2018, that he was being denied a permanent motor vehicle salesperson license pursuant to West Virginia Code § 17A-6E-4(c)(5)[4] because of his previous felony conviction that involved a financial matter and the motor vehicle

---

[3] The licensing requirement is set forth in West Virginia Code § 17A-6E-3(a) (2006) as follows:

> Except as provided in section six [§ 17A-6E-6] of this article, no person may engage in business in this state as a motor vehicle salesperson on and after the first day of January, two thousand eight, without holding a license issued under the provisions of this article.

West Virginia Code § 17A-6E-6 (2006) provides a ten-day time period for a licensed salesperson to transfer his/her license upon a change of employer.

[4] *See supra* note 2.

industry.  The respondent appealed the decision of the Commissioner as provided in West Virginia Code § 17A-6E-10 (2006).[5]

On August 21, 2018, a hearing was held before an independent hearing examiner appointed by the Commissioner.  At the hearing, the respondent admitted that he was convicted of a felony in 2006 for falsifying a loan application while employed at a different motor vehicle dealership in Wheeling.  The respondent testified that the loan application was for a customer at the dealership; that he knew the application he completed was inaccurate; and that the customer eventually defaulted on the loan.  Elaborating further on the circumstances that resulted in his felony conviction, the respondent explained that he began working in the automobile industry in 1998 as a finance manager, and in 2000, he became general manager of Marhefka Autos in Wheeling.  He later "stepped down" from that position to become more involved in the auto sales.  According to the respondent, the FBI began investigating the business practices of Marhefka Autos in 2005.  As an employee of the business, the respondent says he cooperated with the investigation but was informed that if there was any evidence of wrongdoing, he would be criminally charged because he had been the general manager.  The respondent said that to avoid a formal and

_____

[5] West Virginia Code § 17A-6E-10(a) provides: "Any person may appeal an order of the commissioner suspending, revoking, denying or otherwise canceling his or her salesperson license in accordance with the prescribed procedures of the division."  While respondent's appeal was pending, the denial of his license application was stayed, and he retained his temporary license. *See* W.Va. Code § 17A-6E-10(b) ("The commissioner may but is not required to stay the suspension or revocation of a salesperson license during the appeals process.").

public investigation for his family's sake, he agreed to plead guilty to a felony charge of falsifying a loan application.

On October 10, 2005, the respondent signed a plea agreement whereby he agreed to waive his right to an indictment and plead guilty to a felony charge of falsifying a loan application. The plea agreement was filed with the United States District Court for the Northern District of West Virginia on March 14, 2006. On June 2, 2006, the respondent was sentenced to two years of probation. According to the respondent, after his conviction, he began working in the automobile industry in Ohio and continued his employment in that state for more than a decade.

In addition to providing information regarding his felony conviction at the August 21, 2018, hearing, the respondent also submitted character/reference letters from five individuals. The respondent's current employer also testified on his behalf.[6] On October 19, 2018, the Commissioner's final order was entered denying the respondent's application for a motor vehicle salesperson license. The order contained the following findings:

> 8. The Applicant has not had any related issues since 2006. Regardless, the *Statute* is very clear that an exemption cannot be given in this situation.
>
> . . . .

---

[6] The respondent's employer was his brother-in-law.

4

10. The felony offense described in the record and testified to by the Applicant is of a financial matter or of the motor vehicle industry.

11. The Applicant is not eligible for a grant of an exemption under the provision of W.Va. Code § 17A-6E-4(c), and should not be allowed to be licensed as a salesperson.

The respondent appealed the decision of the Commissioner to the circuit court.[7]

By order entered April 30, 2019, the circuit court reversed the Commissioner's decision and ordered that the respondent's application for a motor vehicle salesperson license be granted. The circuit court found that West Virginia Code § 17-A-6E-4(c)(5) cannot lawfully be applied to applicants seeking a license who were convicted of felonies prior to the enactment of the statute because it violates the ex post facto clause of the West Virginia and United States Constitutions. The court further found that the respondent was denied due process as a result of the Commissioner's denial of his license application and that West Virginia Code § 17A-6E-4(c)(5) contravenes both the West Virginia and United States Constitutions because it is both overly broad and overly narrow. Upon entry of the circuit court's order, the Commissioner filed this appeal.

---

[7] West Virginia Code § 17A-6E-10(c) (2006) provides: "Any final order entered pursuant to this article is subject to judicial review as provided in article five [§§ 29A-5-1 et seq.], chapter twenty-nine-a of this code."

## II. Standard of Review

This Court's standard of review for a circuit court's decision in an administrative appeal is well established. In syllabus points one and two, respectively, of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), this Court held:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

> In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

In this case, we are asked to examine the constitutionality of West Virginia Code § 17A-6E-4(c)(5). This Court has long held that "[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syl. Pt. 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967). To that end,

> "[i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general

6

powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syllabus Point 1, *State ex rel. Appalachian Power Company v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).

Syl., *Johnson v. Bd. of Stewards of Charles Town Races*, 225 W.Va. 340, 693 S.E.2d 93 (2010).  With these standards in mind, we consider the parties' arguments.

## III.  Discussion

The Commissioner first contends that the circuit court erred by finding that West Virginia Code § 17A-6E-4(c)(5) cannot lawfully be applied to applicants who were convicted of felonies prior to the enactment of the statute because it results in a violation of the ex post facto clause of the West Virginia Constitution and the United States Constitution.[8]

> Under Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.

---

[8] Article III, Section 4 of the West Virginia Constitution provides:

> The privilege of the writ of habeas corpus shall not be suspended. No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury. No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed.

Likewise, Article I, Section 10 of the United States Constitution provides, in pertinent part, "[n]o State shall . . . pass any . . . ex post facto Law[.]"

Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980). The license requirement for motor vehicle salespersons became effective on January 1, 2008,[9] and provides that a license cannot be issued to an applicant who "has been convicted of a felony" involving financial matters or the motor vehicle industry. W.Va. Code § 17A-6E-4(c)(5).[10] The circuit court found that "the statute constitutes an unlawful ex post facto law" when applied to the respondent because there was no licensing requirement for motor vehicle salespersons when he entered his guilty plea to the felony charge. The circuit court reasoned that because the respondent was unaware at the time he entered his guilty plea that his felony conviction would foreclose his employment as a motor vehicle salesperson in the future, the respondent suffered an additional punishment when the Commissioner denied his license application. In other words, the circuit court found that West Virginia Code § 17A-6E-4(c)(5) operates to the respondent's detriment by denying him the ability to earn a living in the profession he has pursued most of his adult life.

---

[9] *See supra* note 3.

[10] In his response brief, the respondent urged this Court to find that the "has been convicted" language refers to the time period between the effective date of the licensing requirement, January 1, 2008, and the submission of a licensing application. We decline to do so because construing the statutory language in such fashion would reach an absurd result. In that regard, an applicant convicted of a felony involving financial matters or the motor vehicle industry on December 31, 2007, could obtain a license, but an applicant convicted of the same felony on January 1, 2008, could not. It is a well-established rule of statutory construction that "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938).

8

The Commissioner argues that the circuit court's reasoning is flawed because it is clear from the Legislature's stated purpose that the motor vehicle salesperson licensing statute is civil in nature. As such, the Commissioner contends that W.Va. Code § 17A-6E-4(c)(5) does not operate to extend criminal punishment, nor is the sanction it imposes–denial of a license—so punitive as to constitute a criminal penalty. Because the statute is civil in nature, the Commissioner maintains that applying West Virginia Code § 17A-6E-4(c)(5) to the respondent and denying his license application does not implicate the ex post facto clause of the West Virginia and United States Constitutions. In support of his argument, the Commissioner points to *Richmond v. Levin*, 219 W.Va. 512, 516, 637 S.E.2d 610, 614 (2006), wherein this Court observed that

> [t]he due process concerns of the Ex Post Facto Clause have application only to retroactivity of "punitive" laws or rules. That is, "[a] fundamental principle of ex post facto law is that it only applies to criminal proceedings, not civil." *State v. Smith*, 198 W.Va. 702, 713, 482 S.E.2d 687, 698 (1996). *See Haislop v. Edgell*, 215 W.Va. 88, 94, 593 S.E.2d 839, 845 (2003) (observing that legislation which is civil "would not implicate the ex post facto clause," whereas legislation which is punitive "would violate the clause."); *State v. Whalen*, 214 W.Va. 299, 301 n. 2, 588 S.E.2d 677, 679 n. 2 (2003) ("[T]he retroactive aspects of the Sex Offender Registration Act do not violate the constitutional prohibition against ex post facto laws, because the Act is a civil regulatory statute and not a criminal penalty statute.").

This Court has held that whether a statute is civil or criminal in nature is a matter of statutory construction. In syllabus point one of *State ex rel. Palumbo v. Graley's Body Shop, Inc.*, 188 W.Va. 501, 425 S.E.2d 177 (1992), this Court explained:

9

The question of whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction, and requires the application of a two-level inquiry adopted by the United States Supreme Court in *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). First, courts must determine whether the legislature indicated, either expressly or impliedly, a preference for labelling the statute civil or criminal. Second, if the legislature indicates an intention to establish a civil remedy, courts must consider whether the legislature, irrespective of its intent to create a civil remedy, provided for sanctions so punitive as to transform the civil remedy into a criminal penalty. As part of the second level of the inquiry, courts should be guided by the following factors identified by the United States Supreme Court in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644, 661 (1963): "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]"

In syllabus point four of *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001), this Court held:

The question whether an Act is civil or punitive in nature is initially one of statutory construction. A court will reject the Legislature's manifest intent only when a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the Legislature's intention.

When the tests set forth in *Graley's Body Shop* and *Hensler* are applied to the motor vehicle salesperson licensing statutes, it is clear the Legislature intended the denial of a license to be a civil penalty.

10

With regard to the initial inquiry required by syllabus point one of *Graley's Body Shop*, we note that the Legislature did not expressly label the licensing scheme as "civil" in nature; however, the conclusion that the statute is civil is easily reached based upon the expressly stated statutory purpose and the means by which that purpose is achieved. West Virginia Code § 17A-6E-1 (2006) provides:

> (a) It is the purpose of this article to protect retail motor vehicle customers, motor vehicle dealers, banks and the state from sustaining losses due to the fraudulent activity of persons engaged in the business of selling vehicles.
>
> (b) This article establishes minimum competency and ethical standards for persons engaged in the business of selling motor vehicles to the general public.

Having declared its purpose, the Legislature proceeded to set forth an administrative process under which persons seeking a motor vehicle salesperson license must submit an application to the DMV, complete a written test, and undergo a background investigation. *See* W. Va. Code § 17A-6E-4 (2006). In other words, the Legislature set forth a regulatory process for the issuance of licenses to motor vehicle salespersons and conferred the authority to grant such a license upon the DMV, an administrative agency. The Legislature also provided for the revocation, suspension, or refusal of a request for renewal of a motor vehicle salesperson license in certain circumstances, including when a licensee is subsequently convicted of a felony involving financial matters or the motor vehicle industry. *See* W.Va. Code § 17A-6E-9 (2006).

In *Shumate v. West Virginia Department of Motor Vehicles,* 182 W.Va. 810, 392 S.E.2d 701 (1990), this Court examined a statutory enactment that allowed the DMV to revoke the license of a driver who was operating a vehicle under the influence of alcohol for a period of ten years when the driver had a prior license suspension or revocation. In that case, the driver challenged the application of the statute as a violation of the ex post facto clause because it was not in effect at the time of his prior revocation. Explaining that the DMV's authority to revoke a person's license to operate a motor vehicle is an "administrative remedy," this Court declared that the "proceedings which take place pursuant to such statutory enactment are civil proceedings." *Id.* at 814, 392 S.E.2d at 705. The same is true with respect to the statutory enactment for motor vehicle salesperson licensing.

Having determined that the motor vehicle salesperson licensing statutes are civil in nature, we now turn to the second inquiry under syllabus point one of *Graley's Body Shop.* Despite our determination that the Legislature intended to create a civil remedy, we must consider whether the denial of a license is so punitive as to constitute a criminal penalty. When the *Mendoza–Martinez* factors outlined in syllabus point one of *Graley's Body Shop* are applied to West Virginia Code § 17A-6E-4(c)(5), the analysis reveals that the statute is not so punitive as to transform its civil penalty into a criminal one.

Beginning with the first two factors, we find that the disability or restraint here—the inability of the respondent to pursue certain employment—is generally considered non-punitive and has not been historically regarded as a punishment. In *Hudson v. United States*, 522 U.S. 93 (1997), the Supreme Court considered whether monetary penalties and occupational debarment that had been imposed upon the petitioners in that case as a result of their violation of federal banking statutes constituted criminal penalties that precluded their subsequent criminal prosecution for the same conduct on double jeopardy grounds. 522 U.S. at 95. Applying the first and second *Mendoza–Martinez* factors, the Court explained that

> neither money penalties nor debarment has historically been viewed as punishment. We have long recognized that "revocation of a privilege voluntarily granted," such as a debarment, "is characteristically free of the punitive criminal element." *Helvering [v. Mitchell],* 303 U.S. [391], at 399, and n. 2, 58 S.Ct. [630], at 633 n. 2 . . .
>
> Second, the sanctions imposed do not involve an "affirmative disability or restraint," as that term is normally understood. While petitioners have been prohibited from further participating in the banking industry, this is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960).

*Hudson*, 522 U.S. at 104.

Turning to the third *Mendoza-Martinez* factor, we can easily discern that the denial of a motor vehicle salesperson license "does not come into play only on a finding of scienter." *Graley's Body Shop*, 188 W.Va. at 503, 425 S.E.2d at 179, syl. pt.1, in part.

13

Simply put, the licensing statute does not have any inherent scienter requirements. Applying the next factor, it is obvious that the sanction does promote deterrence which is a traditional aim of punishment. However, we agree with the Commissioner that deterrence is a "mere side effect" to the purpose of the statute, which is to protect the public from fraud in the motor vehicle industry.

The fifth factor, which concerns whether the behavior affected by the sanction is already a crime, does not indicate that the penalty imposed is punitive even though it is predicated upon past criminal conduct. Not being able to obtain a license to sell motor vehicles does not result in any additional criminal punishment. The denial of a license simply results in the inability to exercise a privilege that is not universally available.

Turning to the final two factors, we first find that the statute clearly has a rational alternative purpose—protecting motor vehicle customers, dealers, banks, and the state from fraudulent activity. Finally, we find that denying a motor vehicle salesperson license to applicants who have previously committed felonies involving financial matters or the motor vehicle industry is not excessive in light of the statutory purpose of preventing fraudulent activity during the purchase of motor vehicles. The license is not denied for the purpose of punishing the applicant; rather, it is denied as a means of preventing "sustain[ed] losses due to fraudulent activity." W.Va. Code § 17A-6E-1(a).

14

In summary, application of the *Mendoza-Martinez* factors does not show that the denial of a motor vehicle salesperson license pursuant to West Virginia Code § 17A-6E-4(c)(5) constitutes a criminal punishment such that the ex post facto clause is implicated. There is simply no "clear[] proof that the statutory scheme is so punitive in either purpose or effect as to negate the Legislature's intention." *Hensler*, 210 W.Va. at 531, 558 S.E.2d at 331, syl. pt. 2, in part. Accordingly, we now hold that West Virginia Code § 17A-6E-4(c)(5) is a regulatory statute which does not violate the prohibition against ex post facto laws. The circuit court's finding to the contrary is erroneous.

Next, the Commissioner argues that the circuit court erred by finding that application of West Virginia Code § 17A-6E-4(c)(5) resulted in a denial of the respondent's due process rights under the United States and West Virginia Constitutions.[11]

> It has long been recognized that one of the liberty interests protected by due process is a person's interest in the pursuit of a lawful occupation. *See, e.g.*, *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *State v. Memorial Gardens Dev. Corp.*, 143 W.Va. 182, 101 S.E.2d 425 (1957); *Lawrence v. Barlow*, 77 W.Va. 289, 87 S.E. 380 (1915). Thus this and other courts have consistently protected people from arbitrary state interference with their right to pursue a lawful occupation by demanding procedural regularity from government when it licenses private employment.

---

[11] Article III, Section 10 of the West Virginia Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law[.]"

*Major v. DeFrench*, 169 W.Va. 241, 254, 286 S.E.2d 688, 696 (1982); *see also* Syl. Pt. 1, *State ex rel. Ellis v. Kelly*, 145 W.Va. 70, 112 S.E.2d 641 (1960) ("The right to engage in a lawful business, though such business is subject to reasonable regulations under the police power, is protected by constitutional provisions relating to due process of law."). It is also well established that "[d]ue process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments." *Id.* at 70, 112 S.E.2d at 642, syl. pt. 2. Generally, procedural due process requires

> a formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his accusers, and to present evidence on his own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings.

*Jordan v. Roberts*, 161 W.Va. 750, 755-56, 246 S.E.2d 259, 262 (1978) (quotations and citation omitted).

The Commissioner contends that the respondent was provided all the necessary due process protections outlined above. In particular, he was notified of the reason for the denial of his license application. He was given the opportunity to rebut that reason at a hearing that was scheduled within three months of his notice of appeal. At the hearing, respondent was permitted to present evidence on his behalf, and he had the opportunity to confront the Commissioner's representatives. The hearing was conducted by an independent hearing examiner, and the proceedings were properly recorded.

16

Upon review of the record, we find that the circuit court erred by finding that the respondent was not afforded procedural due process. West Virginia Code § 17A-6E-10 specifically provides for "administrative due process" and allows "any person [to] appeal an order . . . denying . . . his or her salesperson license." As noted by the Commissioner, the prescribed procedure for such an appeal, which includes a hearing before an independent hearing examiner, was followed in this case. Although the respondent may not have obtained the outcome he desired, he was afforded his procedural due process rights.[12] The circuit court erred in finding otherwise.

---

[12] During the lower court proceeding, the respondent relied upon *Frietag v. Carter*, 489 F.2d 1377 (7th Cir. 1973), to support his claim that he was denied due process. *Frietag* was a class action that arose after a chauffeur's license was denied to an applicant under a city's taxi-cab licensing ordinance that listed "lack of 'infirmity . . . of mind'" as a prerequisite for issuance of the license. *Id.* at 1379. In that case, the court determined, inter alia, that the applicant had been denied due process because the license denial was based upon fourteen-year old records that indicated that he had been a patient at a psychiatric hospital. Not only was the applicant's current mental state not considered, he was never provided formal notice of the reasons for the license denial or a hearing. *Id.* at 1382. The factual differences between *Frietag* and the case at bar are readily apparent. In *Frietag*, the government official had to determine the applicant's mental status, and the court found that simply relying upon mental health records that were fourteen years old was inadequate and not a fair investigation of the applicant's fitness. *Id.* at 1383. In the case at bar, there was no dispute that the respondent had been previously convicted of a felony involving a financial matter and the motor vehicle industry. Moreover, the respondent was provided notice and a hearing. While the respondent has argued that the Commissioner should have investigated his present situation to determine his fitness to obtain a license, West Virginia Code § 17A-6E-4(c)(5) does not provide for such consideration when applicants are convicted of felonies involving financial matters or the motor vehicle industry. To the extent respondent asserted a substantive due process claim, we address that issue *infra*. As for his lack of procedural due process claim, *Frietag* provides no support.

Finally, the Commissioner argues that the circuit court erred in finding that W.Va. Code § 17A-6E-4(c)(5) violates the substantive due process standard because the statute provides for no exception to the license prohibition when the applicant has been convicted of a felony involving a financial matter or the motor vehicle industry. Specifically, the circuit court found the statute is overly broad "because of its strict prohibition against those individuals [like respondent] acquiring a license regardless of the situation or the facts surrounding their criminal history and/or current character." Concomitantly, the court found that the statute is overly narrow because it "prohibits those who have committed a certain type of felony from obtaining the requisite licensing. . . yet allows other individuals who are guilty of criminal acts to acquire licensure so long as they have not committed a felony."

The Commissioner maintains that the statute is not overly broad because the Legislature sought to protect the public from the exact individuals who are barred from obtaining a license. The Commissioner argues that the Legislature's decision to exclude certain convicted felons from obtaining a motor vehicle salesperson license is a reasonable and proper exercise of the State's regulatory powers. In other words, the Commissioner says that the license prohibition is rationally related to the specific purpose of the statute—protecting motor vehicle customers, dealers, banks, and the State "from fraudulent activity of persons engaged in the business of selling vehicles." W.Va. Code § 17A-6E-1(a). Because exceptions are permitted for other types of felonies, the Commissioner contends that the statute is not overly broad.

18

As for the circuit court's finding that the statute is overly narrow, the Commissioner asserts that the ruling was based upon a misreading of the statute because the court failed to recognize that West Virginia Code § 17A-6E-4(c)(4), the subsection that immediately precedes West Virginia Code § 17A-6E-4(c)(5), prohibits applicants who have "committed a fraudulent act or omission or repeatedly defaulted in financial obligations in connection with the buying, selling, leasing, rental, or otherwise dealing in motor vehicles, recreational vehicles, or trailers" from obtaining a license.[13] Because applicants are prohibited from obtaining a motor vehicle salesperson license if they have committed fraudulent acts in the motor vehicle industry regardless of whether the acts were felonies, misdemeanors, or even crimes, the Commissioner reasons that the statute is not overly narrow.

This Court has previously recognized that the State may regulate certain professions "as an incident to policing the health and welfare of the citizens of this State." *Thorne v. Rousch*, 164 W.Va. 165, 167, 261 S.E.2d 72, 74 (1979). Nonetheless,

> in regulating a given occupation, as in all legislative matters based upon the police power[, r]egulations will only be valid if they bear some reasonable relationship to the public health, safety, morals or general welfare. *State ex rel. Cobun v. Town of Star City*, [157] W.Va. [86], 197 S.E.2d 102 (1973); *Quesenberry v. Estep*, [142 W.Va. 426, 95 S.E.2d 832 (1956)]; *Carter v. City of Bluefield*, 132 W.Va. 881, 54 S.E.2d 747 (1949); *Bowman v. Virginia State Entomologists*, 128 Va. 351, 105 S.E. 141, 12 A.L.R. 1121 (1920).

---

[13] This subsection of West Virginia Code § 17A-6E-4 was not altered when the statute was amended in 2019.

19

164 W.Va. at 168, 261 S.E.2d at 74.  As this Court further explained in *Rousch*,

> [i]nherent in the due process clause of the State Constitution are both the concept of substantive due process and the concept of equal protection of the laws. In order for a statute to withstand constitutional scrutiny under the substantive due process standard, it must appear that the means chosen by the Legislature to achieve a proper legislative purpose bear a rational relationship to that purpose and are not arbitrary or discriminatory. *State ex rel. Harris v. Calendine*, [160] W.Va. [172], 233 S.E.2d 318 (1977).

164 W.Va. at 168, 261 S.E.2d at 74 (footnote omitted).

Upon review, we agree with the Commissioner that the prohibition on the issuance of a motor vehicle salesperson license to an applicant who has been previously convicted of a felony involving a financial matter or the automobile industry bears a rational relationship to a legitimate State concern.  As discussed above, the Legislature enacted the motor vehicle salesperson license requirement to "protect retail motor vehicle customers, motor vehicle dealers, banks and the state from sustaining losses due to the fraudulent activity of persons engaged in the business of selling vehicles."  W.Va. Code § 17A-6E-1(a).  To accomplish that purpose, the Legislature created minimum competency and ethical standards, one of which precludes applicants with a felony conviction like that of the respondent from obtaining a license.  While the prohibition on licensing applicants set forth in West Virginia Code § 17A-6E-4(c)(5) only applies when the applicant has previously committed certain felonious offenses, the prohibition in West Virginia Code § 17A-6E-4(c)(4) applies when the applicant has engaged in fraudulent acts in connection

20

with the motor vehicle industry whether felonious or not. These licensing prohibitions bear a rational relationship to the Legislature's stated purpose of protecting customers, motor vehicle dealers, banks, and the state from fraudulent activity of persons who sell vehicles.

The licensing prohibitions are not arbitrary or discriminatory but rather serve to provide the protection that was the impetus for the licensing scheme. As the Legislature recognized, the motor vehicle industry presents an opportunity for unscrupulous individuals to take advantage of the public. Preventing persons who have a history of engaging in fraudulent activity, defaulting on loans, or committing other criminal offenses related to the motor vehicle industry from obtaining a license to sell motor vehicles is a legitimate and nondiscriminatory means of achieving the protection the Legislature sought to provide. Accordingly, we now hold that West Virginia Code § 17A-6E-4(c)(5) is rationally related to the State's legitimate interest in preventing fraudulent activity in the motor vehicle industry and is not arbitrary or discriminatory. The circuit court's decision to the contrary is erroneous.

## IV. Conclusion

Based on the foregoing, we reverse the April 30, 2019, order of the Circuit Court of Ohio County, and remand this case for entry of an order reinstating the Commissioner's October 19, 2018, order denying the respondent's application for a motor vehicle salesperson license.

Reversed and remanded.

21